**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MOLZAN, INC. d/b/a | § | |
| THE RUGGLES GRILL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-09-01045 |
| UNITED FIRE AND CASUALTY | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM AND ORDER**

This is an insurance dispute between Molzan, Inc., d/b/a The Ruggles Grill ("Molzan"), and

United Fire and Casualty Company.  Molzan is the named insured under a United Fire "Uni-pack"

policy (the "Policy"), with effective dates of February 16, 2008 to February 16, 2009.  The Policy

provided coverage for loss or damage to certain property – including The Ruggles Grill, a restaurant

in Houston, Texas – as well as for lost business income.  Under the Policy, United Fire was

obligated to "pay for the actual loss of Business Income [Molzan] sustain[ed] due to the necessary

'suspension' of [Molzan's] 'operations' during the 'period of restoration.'"  (Docket Entry No. 9,

Ex. C).  The Policy contained two appraisal clauses.  Under these clauses, if the parties disagree as

to the "amount of loss" or the "amount of Net income operating expense," either party may make

a written demand for appraisal.[1]

---

[1]     The appraisal clause in the commercial property coverage section of the Policy states: "If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss."  (Docket Entry No. 8, at 2).  The appraisal clause in the business income coverage section of the Policy states: "If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss."  (Docket Entry No. 9, Ex. C).

On September 13, 2008, Hurricane Ike came through the Houston area.  The Ruggles Grill was damaged in the storm.  It is undisputed that the Policy covered at least some of Molzan's losses from the damage.  United Fire has paid Molzan approximately $277,012 for damage to the building and property and $300,000 for lost business income.  Molzan claims additional property loss, above the $277,012 paid.  The additional loss includes a "rusted hood vent in the kitchen" and "rusted kitchen equipment" as well as  "stained glass windows; mural on ceiling; a painting on the exterior of the building; pasta machine; rotisserie; and sound system." (Docket Entry No. 9, Ex. E).  Molzan also asserts that United Fire must pay a total of at least $780,000 for lost business income.

On March 31, 2009, Molzan made a written demand for an appraisal.  United Fire rejected the demand, asserting that the Policy did not cover the additional claimed property losses or lost business income.  The basis for rejecting coverage for additional lost business income was that "restoration . . . [was] not resumed 'as quickly as possibl[e.]'"  (Docket Entry No. 8, Ex. C).  The Policy's "Loss Determination" section states that if the insured  does not "resume 'operations' as quickly as possible, [United Fire] will pay based on the length of time it would have taken to resume 'operations' as quickly as possible."  (*Id.*).  According to United Fire, "it appears that [Molzan's] only dispute with United Fire regarding this coverage is that United Fire ended these benefits too early." (Docket Entry No. 9,  Ex. A).  United Fire asserts that it calculated the monthly business income "based entirely on financial document[s] provided by [Molzan]" and that the only dispute is over the amount of time for lost-business-income coverage, not the monthly amount.  (Docket Entry No. 15, at 4).  United Fire asserts that this dispute is a "coverage" issue that is not subject to appraisal.  (*Id.*).

Molzan sued United Fire on April 8, 2009, alleging breach of contract and seeking to enforce

the Policy's appraisal clause.  (Docket Entry No. 1).  Molzan has moved to compel an appraisal. (Docket Entry No. 8).  United Fire responded, (Docket Entry No. 9), and Molzan replied, (Docket Entry No. 10).  Molzan argues that an appraisal is appropriate to determine which items were damaged and the total loss amounts for both property damage and business income.  Molzan relies on *Johnson v. State Farm Lloyds*, 204 S.W.3d 897 (Tex. App.–Dallas 2006, pet. granted), for the proposition that an insurance company cannot defeat an appraisal request by labeling the dispute as a coverage issue.  Molzan argues that the parties' disagreement over the value of the additional items damaged by the hurricane and the total amount of lost business income makes this dispute "ripe for appraisal."

United Fire responds that the "*Johnson* court's holding is contrary to over 120 years of Texas case law precedent and stands alone in its conclusions."  (Docket Entry No. 9, at 3 n.2).  United Fire cites *Scottish Union and Nat'l Ins. Co. V. Clancy*, 8 S.W. 630, 631 (Tex. 1888), *Wells v. American States Preferred Ins. Co.*, 919 S.W. 2d 679, 683 (Tex App.–Dallas 1996, writ denied), and *Lundstrom v. United Services Auto Ass'n-CIC*, 192 S.W.3d 78, 89 (Tex. App.– Houston [14th Dist.] 2006, pet. denied), to argue that the appraisal process does not apply when there are disputes about the legal issue of coverage.  United Fire contends that an appraisal to determine the "amount of loss" under the Policy would be appropriate only if there was a dispute about the worth of damaged property, and that an appraisal to determine the "amount of Net Income operating expense" would be appropriate only if there was a dispute about the monthly amounts owed under the Policy.  United Fire contends that neither of these amounts is disputed.  Instead, according to United Fire, the only issues are the appropriate "period of restoration" for which United Fire must pay the undisputed monthly lost income amount and whether the damaged property is covered by the policy, which are

3

beyond the scope of an appraisal.  United Fire concedes that "if there is a dispute regarding the cost to perform the repairs identified by United Fire as resulting from a covered loss, this issue is properly appraisable and United Fire will agree to participate in the process."  (Docket Entry No. 9, at 4).  United Fire, however, opposes appraisal to the extent Molzan "disputes the determination of the scope of covered damage."  (*Id.*).

Since the parties submitted their briefs, the Texas Supreme Court has decided the case that Molzan relied on in support of its motion.  *See State Farm Lloyds v. Johnson*, - - - S.W.3d - - - -, No. 06-1071, 2009 WL 1900538 (Tex. July 3, 2009).  In *Johnson*, the insured filed a claim alleging hail damage to her roof.  204 S.W.3d at 898.  The insurer had the roof inspected and concluded that only the ridgeline had been damaged.  *Id.*  The insured hired an independent inspector, who concluded that the entire roof needed to be replaced.  *Id.*  The insured invoked the policy's appraisal clause, which stated:

> If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire . . . . The appraisers shall then set the amount of the loss.

*Id.* at 900.  The insurer refused to participate in the appraisal process on the ground that the dispute was over causation – a coverage issue – not over the "amount of loss."  *Id.* at 901.  The insurer argued that the issue was which shingles were damaged by hail –  a covered peril – and which were not.  *Id.*  The insured sought a declaratory judgment compelling appraisal  and the parties filed cross-motions for summary judgment.  The trial court entered summary judgment in favor of the insurer, finding that the dispute over whether hail caused the roof damage was a coverage issue that made

the appraisal process inapplicable.  The Texas Court of Appeals reversed, stating that because the parties agreed "that covered property sustained damage from a covered peril but fail[ed] to agree on the amount of loss, the appraisal clause applie[d]"  *Id.* at 903.  The appellate court explained that "[i]f the parties had to first agree on which specific shingles were damaged and approach every disagreement on the extent of damage as a causation, coverage or liability issue, either party could defeat the other party's request for appraisal by labeling a disagreement as a coverage dispute."  *Id.* Molzan relied on this opinion in its motion for appraisal.  The Texas Supreme Court affirmed the appellate court.  *See State Farm Lloyds v. Johnson*,  2009 WL 1900538 at *6.

The Texas Supreme Court began its analysis by reviewing the history of insurance appraisal clauses, noting their long and ubiquitous use in property insurance policies.  *Id.* at *2.  The court emphasized the well-established principle that the "scope of appraisal is damages, not liability."  *Id.* at *3.  The court recognized that Texas courts have split on whether appraisers can decide causation issues.  *Id.* at *3 (citing *Lundstrom*, 192 S.W.3d at 89 (rejecting claim that a causation dispute bars using an appraisal); *Germania Farm Mut. Ins. Ass'n v. Williams*, No. 11-00-00393-CV, 2002 WL 32341841, at *3–4 (Tex. App.–Eastland May 23, 2002, no pet.) (holding that appraisers cannot consider causation)).  The Texas Supreme Court noted that the dispute before them was not clearly about causation, because the disputed issues included how many shingles were damaged and needed replacing and at what cost.  But even if the dispute did involve causation, the court concluded that appraisal was still appropriate.  The presence of a causation dispute did not show whether the question was one of liability or of damages.  In the abstract, "[c]ausation relates to both liability and damages because it is the connection between them."  *Id.* at *3.  Although in actual cases, causation issues usually falls into either liability or damages, that did not, according to the court, exclude the

appraisers' role. "Any appraisal necessarily includes some causation element, because setting the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else." *Id.* at *4. The court explained that an appraiser can decide the amount of loss without deciding questions of coverage or liability, although the specific questions for the appraiser could vary:

> [W]hen an indivisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts. When divisible losses are involved, appraisers can decide the cost to repair each without deciding who must pay for it. When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong. And when the parties disagree whether there has been any loss at all, nothing prevents the appraisers from finding "$0" if that is how much damage they find.

*Id.* at *5 (footnotes omitted). The court held that if "appraisers can never allocate damages between covered and excluded perils, . . . [t]hat would render appraisal clauses largely inoperative, a construction we must avoid." *Id.* at *4.

The court rejected State Farm's argument in *Johnson* that there was a causation issue outside the scope of appraisal because there was a dispute about which shingles were damaged by a covered peril and which were not. "Nothing in the summary judgment record establishe[d] that Johnson's roof was damaged by anything else [but hail]." *Id.* at *3. The court held that "[b]ecause an appraisal has yet to take place . . . the record does not establish that it will exceed the permissible scope of appraisal." *Id.* at *1. The Texas Supreme Court agreed with the lower court that "[a] dispute about how many [items] were damaged and need replacing is surely a question for the appraisers. If the parties must agree on precisely which [items] have been damaged before there can be an appraisal, appraisals would hardly be necessary." *Id.* The parties in *Johnson* agreed that the

6

insurance policy covered at least some of the roof damage but disagreed as to whether all or only part of the roof had to be repaired or replaced under the policy.  "To the extent the parties disagree which [items] needed replacing, that dispute would fall within the scope of appraisal." *Id.* at * 3.

The Johnson court recognized that appraisers cannot "rewrite the policy" or go beyond damage questions entrusted to them.  The court held that no matter what an appraiser says, an insurer does not have to pay for excluded perils. *Id.* at *5.  Without the appraisal, however, the court could not decide whether the appraisers had gone beyond the damages questions.  That depended on the "nature of the damage, the possible causes, the parties' dispute, and the structure of the appraisal award." *Id*.  But the insured could not "avoid appraisal at this point merely because there might be a causation question that exceeds the scope of appraisal." *Id*.

In the present case, United Fire denied coverage for several items of property on the basis that the claimed damage was not caused by the September 13, 2008 hurricane.  For example, United Fire asserts that Molzan's claims for the rusted hood vent and rusted kitchen equipment were not covered because the rust damage was not caused by water leaking through the roof after the storm, but instead by Molzan's "neglect to use all reasonable means to save and preserve the property from further damage."  The Policy excludes damage caused by such neglect.  (Docket Entry No. 9, Ex. B).  United Fire also denied coverage for damage to a ceiling mural and a painting on the outside of the building on the basis that these items were not damaged by the storm.  (Docket Entry No. 9, Ex. D).  In the present case, as in *Johnson*, the parties agree that a covered event occurred but disagree about whether that event caused the damage to the claimed items.  As in *Johnson,* an appraisal is appropriate to determine the amount of damage to these items.  As in *Johnson,* the

insured cannot avoid appraisal at this point merely because there could be a causation question outside the appraisal's scope. *See Johnson*, 2009 WL 1900538 at \*5.

With respect to lost business income, the record is unclear as to how Molzan calculated the $780,000 it asserts it is owed under the Policy.  United Fire is correct that the length of time for which lost income benefits were properly payable is a coverage determination.  But the record does not permit this court to conclude that Molzan agrees with the monthly lost income figures and only disagrees as to the time period for which lost income benefits are payable.  United Fire asserts that it calculated the monthly business income figure using the documents Molzan provided, but there is no indication that Molzan agrees with the calculation.  Molzan disputes the amount of lost income benefits paid by United Fire.  The Policy allows a party to seek an appraisal where there is a dispute as to the "amount of Net Income and operating expense or the amount of loss."  Molzan is entitled to an appraisal under the Policy on the lost business income claim as well as the property damage claims.

This case is similar to *Johnson* in another respect that further supports granting Molzan's motion.  This case, like *Johnson*, is in an "unusual posture" because no appraisal has occurred.  The Texas Supreme Court observed that this "makes a big difference for several reasons."  *Johnson*, 2009 WL 1900538 at \*5.  "[A]ppraisal is intended to take place before suit is filed; this Court and others have held it is a condition precedent to suit.  Appraisals require no attorneys, no lawsuits, no pleadings, no subpoenas, and no hearings.  It would be a rare case in which appraisal could not be completed with less time and expense than it would take to file motions contesting it."  *Id.* "Allowing litigation about the scope of appraisal before the appraisal takes place would mark a dramatic change in Texas insurance practice, and surely encourage much more of the same." *Id.*  The

8

court observed that "appraisals generally resolve" disputes such as this one.  "Litigating the scope of appraisal is wasteful and unnecessary if the appraisal itself can settle the controversy."  *Id*.  Even if an appraisal is flawed or exceeds its permissible scope, either party can object to the appraisal procedures and challenge them in this litigation.  *Id.*  "[I]n every property damage claim, someone must determine the 'amount of loss'" and "appraisals should generally go forward without preemptive intervention by the courts."  *Id.* at *6.

Molzan's motion to compel appraisal is granted.  Because the primary relief Molzan seeks is the appraisal, this case is stayed and administratively closed pending the results of that process. The case may be reinstated to the active docket on motion filed no later than fourteen days after the appraisal is completed.

SIGNED on July 23, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

9